Wesley D. Ray (SBN 026351)
Wesley.Ray@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600
Facsimile:  480.970.4610
*Attorneys for the Debtors*

## IN THE UNITED STATES BANKRUPTCY COURT

## THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | |
| | Case No.  2:20-bk-05017-DPC |
| ALAMO CHANDLER, LLC, | |
| | Joint Administration With |
| ALAMO GILBERT, LLC, | Cases No. 2:20-bk-05020-DPC |
| | 2:20-bk-05026-DPC |
| ALAMO TEMPE, LLC, | |
| | Chapter 11 Proceedings |
| Debtors. | |
| | |
| THIS FILING APPLIES TO: | **DEBTORS' JOINT PLAN OF** |
|   _X_   All Debtors | **REORGANIZATION DATED** |
| _____ Alamo Chandler, LLC | **OCTOBER 6, 2020** |
| _____ Alamo Gilbert, LLC | |
| _____ Alamo Tempe, LLC | |

Alamo Chandler, LLC ("Alamo Chandler,") Alamo Gilbert, LLC, ("Alamo Gilbert,") and Alamo Tempe, LLC ("Alamo Tempe" and together with Alamo Chandler and Alamo Gilbert, the "Debtors"), as debtors and debtors in possession in the above-captioned bankruptcy cases, hereby submit to the Court and creditors of the Debtors' Estates this *Joint Plan of Reorganization Dated October 6, 2020* (the "Plan") pursuant to 11 U.S.C. § 1189.

# I.    DEFINITIONS

For purposes of this Plan, capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in this Section I of the Plan. Any term used in the Plan that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

**Allowed Administrative Claim**: Every cost or expense of administration in the Bankruptcy Case, including, but not limited to, any actual and necessary expenses of preserving or disposing of the assets of the Estate, any actual and necessary expenses incurred in operating the Debtors' business postpetition, any professional fees and costs approved by the Court, and all Claims approved under Bankruptcy Code § 507(a)(2).

**Allowed Claim:** A Claim:

1.    With respect to which a proof of claim has been filed with the Court within the applicable period of time fixed by Bankruptcy Rule 3003 and to which no objection to the allowance of the Claim has been filed by the Debtors or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending; or

2.    Scheduled in the lists of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent, or unliquidated as to the amount.

An Allowed Claim shall not include unmatured or postpetition interest, penalties, fees, or costs, unless specifically stated in the Plan. Notwithstanding Bankruptcy Code section 502(a) and Bankruptcy Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

**Allowed Interest**: An Interest in the Debtors held by a person or entity as of the Petition Date, and to which no objection to the allowance of the Interest has been filed by the Debtors or any other party, or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending.

**Allowed Priority Claim**: The Allowed Claim of a Creditor that is entitled to priority in payment under Bankruptcy Code sections 507(a)(3) through (a)(10).

**Allowed Secured Claim**: An Allowed Claim to the extent that such Allowed Claim is secured by a lien that is unavoidable, on property in which the Estate has an interest, to the extent of the value of such Creditor's interest in the Estate's interest in such property, as determined in light of the purpose of the valuation and of the proposed disposition and use of such property.

**Allowed Unsecured Claim**: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the Estate has an interest.

**AmEx:** American Express National Bank.

**Bankruptcy Case**: The Debtors' jointly-administered Chapter 11 bankruptcy cases; Case Nos. 2:20-bk-05017-DPC, 2:20-bk-05020-DPC, 2:20-bk-05026-DPC.

**Bankruptcy Code**: 11 U.S.C. §§ 101, *et seq.*, including, and as amended by, the Small Business Reorganization Act of 2019 11 U.S.C. §§ 1181, *et. seq.*, applicable to these Bankruptcy Cases.

**Bankruptcy Court**: The United States Bankruptcy Court for the District of Arizona.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure in effect as of the Petition Date.

**BNC**: BNC National Bank.

**Chapter 11**: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq.*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

2843182.v1

**Claim**:  (a) A right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, which right arose or accrued prior to the Confirmation Date; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation; or (c) a claim arising under Bankruptcy Code section 502(g).

**Claimant or Creditor**:  Any person or entity that asserts a Claim.

**Confirmation**:  The signing by the Court of the Confirmation Order.

**Confirmation Date**:  The date upon which the Confirmation Order is entered upon the Bankruptcy Court's docket.

**Confirmation Order**:  The Order signed by the Bankruptcy Court pursuant to Bankruptcy Code section 1191 confirming this Plan.

**Contingent Claim**:  Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) that was not filed in a sum certain, or that has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) that has not been allowed on or before the Confirmation Date.

**Court**:  The Bankruptcy Court.

**Debtors**:  Alamo Chandler, LLC, Alamo Gilbert, LLC, and Alamo Tempe, LLC.

**Disputed Claim**:  A Claim that the Debtors listed as unliquidated, disputed, or contingent in their Schedules of Assets and Liabilities, or to which an objection has been filed that has not been resolved by a Final Order of the Bankruptcy Court.

**Effective Date**:  The first business day that is at least 30 days after the Confirmation Date.  In the event the Confirmation Order has been stayed by a court of competent jurisdiction, the Debtors may elect to delay the Effective Date pending a resolution of the order staying the Confirmation Order.

**Estate**:  The accumulation of each of the Debtor's bankruptcy estates, created by the filing of the Petitions, as identified and described in Bankruptcy Code sections 541 and 1186.

**Final Order**:  An order or judgment of the Bankruptcy Court that has not been stayed.

**Franchise Agreements:**  The agreements between the Debtors and Franchisor, pursuant to which the Debtors are required to pay certain fees and royalties to Franchisor in exchange for the usage of certain marks and the provision of various services.

**Franchisor**:  Alamo Drafthouse Cinemas, LLC.

**GetBackd:**  Austin Business Finance, LCC dba GetBackd.

**Insider**:  A person or entity within the definition contained at Bankruptcy Code section 101(31).

**Interest**:  Any equity interest in any of the Debtors as of the Petition Date.

**Interest Holder**:  Any person or persons owning an Interest in any of the Debtors as of the Petition Date.

**New Debt Obligations**:  Those debts of the Debtors that existed pre-confirmation, but that are modified by the confirmed Plan resulting in the creation of a new obligation of the Reorganized Debtors pursuant to this Plan.  The obligations for which the Reorganized Debtors have liability under the terms of the confirmed Plan.  The New Debt Obligations shall not be considered in default unless or until the Reorganized Debtors default on such obligations after the Effective Date.

**Person**:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**Petitions**:  The voluntary bankruptcy petitions for relief filed by the Debtors under Chapter 11 of the Bankruptcy Code, which commenced the Bankruptcy Cases.

**Petition Date**:  The date on which the Petitions were filed; May 13, 2020.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

**Plan**:  This Joint Plan of Reorganization and any amendments or supplements hereto.

**Projected Disposable Income**:  The amount of income that is received by each Debtor and not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of that Debtor, and therefore available for the payment of Allowed Claims under the Plan, as reflected in the Projections attached hereto as Exhibit "A," as ultimately amended.

**Projections:**  The financial projections for each of the Debtors, attached hereto as Exhibit "A," as they may be ultimately amended.

**Pro Rata**:  The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

**Reorganized Debtors**:  The Debtors after the Effective Date.

**SBA**:  The United States Small Business Administration, acting through its properly designated representatives and agents.

**Schedules** or **Schedules of Assets and Liabilities**:  The Schedules of Assets and Liabilities and Statements of Financial Affairs, and any amendments thereto, filed by the Debtors.

**Stearns:**  Stearns Bank N.A.

**Trustee**:  The Subchapter V Trustee appointed in the Bankruptcy Cases; Mr. Edward Burr of MAC Restructuring Advisors, LLC.

**US Foods:**  US Foods, Inc.

**Unliquidated**:  The term describing the Allowed Claim of a Creditor when the value of its claim has not been determined or stated with finality.

## II.    INTRODUCTION

This Plan is being proposed by the Debtors to reorganize their liabilities, so as permit continued operations from which Creditors and Interest Holders can be paid, and avoid the disastrous effects of a liquidation.  Unless otherwise noted, those portions of the Plan providing factual information concerning the Debtors, their assets, and their liabilities, have

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2843182.v1

been prepared from information maintained or prepared by the Debtors and their retained professionals. The financial information contained in this Plan has not been subjected to an audit by an independent auditor or certified public accountant. The Debtors are not able to warrant or represent that the information contained in this Plan is without any inaccuracies. To the extent practicable, though, the information provided herein has been prepared from the Debtors' financial books and records and efforts have been made to ensure that all such information is fairly represented.

This Plan will classify all Creditors and Interest Holders into classes. The treatment of each class of Creditors or Interest Holders will be set forth in the Plan. You should carefully examine the treatment of the class to which your Claim or Interest is assigned.

The Bankruptcy Court will confirm the Plan if the requirements of Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable, or contractual rights are altered, as provided in Bankruptcy Code section 1124. An impaired class of Claims is deemed to have accepted the Plan if Claimants holding at least two thirds (2/3) of the dollar amount of those Claims who vote, and more than one half (1/2) in number of those Claims who vote, have accepted the Plan. An impaired class of Interests is deemed to have accepted the Plan if the Plan has been accepted by at least two thirds (2/3) in amount of the Allowed Interests who vote on the Plan. Only the votes of those Creditors or Interest Holders whose ballots are timely received will be counted in determining whether a class has accepted the Plan. Even if each class of Creditors and Interest Holders does not accept the Plan, the Plan can be confirmed under Bankruptcy Code section 1191(b).

## III. HISTORY OF THE DEBTORS' BUSINESS OPERATIONS

Each of the Debtors operates an Alamo Drafthouse Cinema (each a "Theater," and collectively, the "Theaters") under a franchise agreement with Franchisor. The Debtors' business model is to provide patrons of the Theaters with an upscale movie-going experience that includes premium seating and amenities, and access to a full-service menu.

2843182.v1

The Theaters are located, respectively, in Gilbert, Tempe, and Chandler Arizona. Alamo Gilbert operates its Theater in space leased from Alamo Gilbert Holdings, LLC (the "Gilbert Landlord") under that certain Lease Agreement dated as of August 8, 2018 (the "Gilbert Lease"). Alamo Tempe operates its Theater in space leased from Alamo Tempe Holdings, LLC (the "Tempe Landlord) under that certain Lease Agreement dated as of June 12, 2017 (the "Tempe Lease). Alamo Chandler operates its Theater in space leased from The Shoppes at Chandler Heights, LLC (the "Chandler Landlord") under that certain Lease dated as of January 13, 2016 (the "Chandler Lease).

The Gilbert Theater opened on, or about, November 27, 2019. The Tempe Theater opened on, or about, May 17, 2018. The Chandler Theater opened on, or about, December 1, 2016. Until the spring of 2020, although still relatively new, the Debtors' Theaters were generally operating sustainably and had good prospects for growth. COVID-19 dramatically changed the Debtors' business landscape.

The cinema industry has been especially hard-hit by COVID-19. COVID-19 and the array of resultant stay-at-home orders entered across the United States have prevented theater operators, like the Debtors, from conducting business, resulted in the suspension of movie releases, and instilled fear in the movie-going public.

On March 19, 2020, Governor Ducey issued Executive Order 2020-09 (the "First Executive Order"). The First Executive Order compelled the closure of all movie theaters in the state of Arizona to protect against the spread of COVID-19. As a result of the First Executive Order, the Debtors Theaters were promptly and completely closed. The First Executive Order forcing the closure of the Theaters, though a series of intervening orders, expired on May 15, 2020. On June 29, 2020, Governor Ducey issued Executive Order 2020-43, (the "Second Executive Order," and collectively with the First Executive Order, the "Executive Orders"), again forcing the closure of the Theaters through July 27, 2020. By virtue of the Executive Orders, the Debtors were legally and completely prohibited from operating their businesses for a total of approximately 85 days.

In addition to the operational restrictions created by the Executive Orders, the

Debtors have had, and continue, to struggle with an absence of high-profile movie releases. First-run movies produced and distributed by major film studios are the primary driver of patrons to the Debtors' Theaters. Since approximately March 6, 2020, only two high-profile movies were released by the major film distributors; *Onward* and *Tenet*. The vast majority of movies scheduled for release have been postponed or, in some cases, released directly to video on demand. This has deprived the Debtors of their primary product, and significantly impaired the Debtors' ability to generate revenue. These regulatory and supply-chain problems, when coupled with the general fear of public places that COVID-19 has created within the movie-going public, made the Debtors' prior business structure infeasible and necessitated these Bankruptcy Cases.

### A. The Debtors' Ownership and Management

Each of the Debtors is managed, on a day-to-day basis, by Craig Paschich. Paschich Alamo Holdings LLC ("PAH") owned a majority of the Class A Interests in each of the Debtors as of the Petition Date. PAH is owned and managed by Mr. Paschich and his wife, Kimberly Paschich. Listings of the other holders of Interests in the Debtors, as of the Petition Date, were filed as part of each Debtor's Schedules.

### B. Projections for Future Operations

With consideration of all of the foregoing, among other things, the Debtors, with the assistance of the Gilbert Landlord and the Tempe Landlord, have prepared financial Projections extending through the year 2023 to demonstrate their ability to perform under the Plan. The Projections are attached hereto as Exhibit "A" and incorporated fully herein by this reference. The Projections are based upon the Debtors' best current estimates of the future revenues to be generated through their operations, and the expenses the Debtors presently expect to incur. The Debtors reserve the right to amend or revise the Projections in the future.

## IV. CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Class 1: Administrative and Priority Claims

#### 1. Class 1-A: Allowed Administrative Claims.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

2. Class 1-B: Allowed Priority Tax Claims.

**B.** **Class 2: Alamo Gilbert Secured Claims**

3. Class 2-A: Allowed Secured Claim of Stearns.

4. Class 2-B: Allowed Secured Claim of the SBA.

**C.** **Class 3: Alamo Tempe Secured Claims**

5. Class 3-A: Allowed Secured Claim of BNC.

6. Class 3-B: Allowed Secured Claim of GetBackd.

7. Class 3-C: Allowed Secured Claim of the SBA.

**D.** **Class 4: Alamo Chandler Secured Claims**

8. Class 4-A: Allowed Secured Claim of BNC.

9. Class 4-B: Allowed Secured Claim of US Foods.

10. Class 4-C: Allowed Secured Claim of AmEx.

11. Class 4-D: Allowed Secured Claim of the SBA.

**E.** **Class 5: Unsecured Claims**

12. Class 5-A: Allowed Unsecured Claims.

**F.** **Class 6: Equity Interests**

13. Class 6-A: Allowed Interests.

**V.** **IMPAIRMENT OF CLASSES**

Classes 1-A and 1-B are unimpaired under the Plan. All other Classes are impaired, as that term is defined in Bankruptcy Code section 1124.

**VI.** **TREATMENT OF CLASSES**

**A.** **Class 1: Priority Claims**

1. **Class 1-A: Allowed Administrative Claims**

This Class consists of all Allowed Administrative Claims against the Debtors. This Class is not impaired. Any Allowed Administrative Claims incurred in the ordinary course of the Debtors' operations will be paid in accordance with the terms established by the Debtors and the implicated Claimant. Unless other Claimants holding Claims in this Class agree to an alternative form of treatment, the Allowed Administrative Claims of Class 1-A

shall be paid in full, in cash, on or before the Effective Date. Any Class 1-A Administrative Claim not allowed as of the Effective Date shall be paid as soon thereafter as it is allowed and ordered paid by the Court. Claimants holding Claims in this Class will be paid, on account of such Claims, from the Debtor or Debtors against which such Claims exist.

### 2. Class 1-B: Allowed Priority Tax Claims

This class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8). As provided in 11 U.S.C. § 1129(a)(9)(C), unless they agree to an alternative form of treatment, Claimants holding Claims in this Class will be paid in full in equal quarterly installments, commencing 30 days after the Effective Date, with interest accruing at the otherwise applicable statutory rate. Any amount that remains owing to the holder of an Allowed Priority Claim in this Class, on account of such Allowed Priority Claim, shall be paid on the fifth anniversary of the Petition Date. Any Class 1-B Claims not allowed as of the Effective Date shall be paid, according to the terms of this Class, as soon thereafter as they are allowed by the Court. This Class is not impaired. Claimants holding Claims in this Class will be paid, on account of such Claims, from the Debtor or Debtors against which such Claims exist.

### B. Class 2: Alamo Gilbert Secured Claims

### 1. Class 2-A – Allowed Secured Claim of Stearns

This Class consists of the Allowed Secured Claim of Stearns again Alamo Gilbert. Stearns asserts that the amount of its Claim is $1,396,934.75, and that its Claim is secured by a first-position lien on substantially all of the assets of Alamo Gilbert. Pursuant to Section 506(a) of the Bankruptcy Code, the amount of Stearns' Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the parties. Any amount by which Stearns' Allowed Claim exceeds the value of its collateral will constitute an Unsecured Claim, and be treated as part of Class 5-A.

Alamo Gilbert will pay Stearns' Allowed Secured Claim, in full, with interest accruing at the rate of 5% *per annum*, on the following schedule: No payments will be

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

made until June 1, 2021. Commencing June 1, 2021, for a period of 12 months, Alamo Gilbert will make monthly interest-only payments to Stearns. Commencing June 1, 2022, the unpaid balance of Stearns' Allowed Secured Claim will be paid in equal monthly installments of principle and interest over the course of 10 (ten) years. Any amount that remains owing to Stearns on account of its Allowed Secured Claim shall be paid on, or before, June 1, 2032. The Debtors may pay all, or any portion, of the balance of Stearns' Allowed Secured Claim at any time without penalty. Stearns will retain its liens and security interests in Alamo Gilbert's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date. Immediately upon payment in full of Stearns' Allowed Secured Claim, all of Stearns' liens and security interests in the Debtors' property will be deemed satisfied, extinguished, released, and discharged in full.

### 2. Class 2-B – Allowed Secured Claim of SBA

This Class consists of the Allowed Secured Claim of the SBA against Alamo Gilbert. The SBA asserts that the amount of its Claim is $112,531.20, and that its Claim is secured by a lien on substantially all of the assets of Alamo Gilbert. Alamo Gilbert disputes that the SBA's Claim is secured, to any extent, for two reasons. Initially, the SBA did not perfect its lien with the filing of a UCC-1 Financing Statement until May 17, 2020. This was after the Petition Date, and potentially in violation of the automatic stay of 11 U.S.C. § 362. Secondly, any lien asserted by the SBA would be junior to the liens of Stearns. Alamo Gilbert asserts that there is no equity in the value of its assets, after accounting for the senior Secured Claim of Stearns. In accordance with 11 U.S.C. § 506(a), then, the entirety of the SBA's Claim is Unsecured. The SBA's Claim against Alamo Gilbert, in its entirety, will be deemed to be Unsecured and treated as a part of, and in accordance with the treatment in the Plan for Class 5-A.

This Class is included herein only to provide disclosure regarding Alamo Gilbert's liability to the SBA, and to promote transparency. For the reasons set forth above, Alamo Gilbert asserts that Class 2-B is an empty Class and a nullity. Unless the Court subsequently orders that some portion of the SBA's Allowed Claim is Secured, this Class

shall be disregarded for all purposes relating to Plan confirmation and extinguished by the Confirmation Order.

### C. Class 3: Alamo Tempe Secured Claims

#### 1. Class 3-A – Allowed Secured Claim of BNC

This Class consists of the Allowed Secured Claim of BNC against Alamo Tempe. BNC asserts that the amount of its Claim is $536,171.46, and that its Claim is secured by a first-position lien on substantially all of the assets of Alamo Tempe. Pursuant to Section 506(a) of the Bankruptcy Code, the amount of BNC's Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the parties. Any amount by which BNC's Allowed Claim exceeds the value of its collateral will constitute an Unsecured Claim, and be treated as part of Class 5-A.

Alamo Tempe will pay BNC's Allowed Secured Claim, in full, with interest accruing at the rate of 5% *per annum*, on the following schedule: No payments will be made until June 1, 2021. Commencing June 1, 2021, for a period of 12 months, Alamo Tempe will make monthly interest-only payments to BNC. Commencing June 1, 2022, the unpaid balance of BNC's Allowed Secured Claim will be paid in equal monthly installments of principle and interest over the course of 10 (ten) years. Any amount that remains owing to BNC on account of its Allowed Secured Claim shall be paid on, or before, June 1, 2032. The Debtors may pay all, or any portion, of the balance of BNC's Allowed Secured Claim at any time without penalty. BNC will retain its liens and security interests in Alamo Tempe's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date. Immediately upon payment in full of BNC's Allowed Secured Claim, all of BNC's liens and security interests in Alamo Tempe's property will be deemed satisfied, extinguished, released, and discharged in full.

#### 2. Class 3-B – Allowed Secured Claim of GetBackd

This Class consists of the Allowed Secured Claim of GetBackd against Alamo Tempe. GetBackd asserts that the amount of its Claim is $287,500, and that, to the extent it does not hold legal title to receivables generated by Alamo Tempe in the future, its Claim is

secured by a lien on substantially all of the assets of Alamo Tempe. GetBackd's claim will be treated as a Secured Claim and, pursuant to Section 506(a) of the Bankruptcy Code, the amount of GetBackd's Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the parties. Any amount by which GetBackd's Allowed Claim exceeds the value of its collateral will constitute an Unsecured Claim, and be treated as part of Class 5-A.

Alamo Tempe will pay GetBackd's Allowed Secured Claim, in full, with interest accruing at the rate of 5% *per annum*, on the following schedule: No payments will be made until June 1, 2021. Commencing June 1, 2021, for a period of 12 months, Alamo Tempe will make monthly interest-only payments to GetBackd's. Commencing June 1, 2022, the unpaid balance of GetBackd's Allowed Secured Claim will be paid in equal monthly installments of principle and interest over the course of 10 (ten) years. Any amount that remains owing to GetBackd's on account of its Allowed Secured Claim shall be paid on, or before, June 1, 2032. The Debtors may pay all, or any portion, of the balance of GetBackd's Allowed Secured Claim at any time without penalty. GetBackd will retain its liens and security interests in Alamo Tempe's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date, but will not own any portion of the receivables generated by Alamo Tempe. Immediately upon payment in full of GetBackd's Allowed Secured Claim, all of GetBackd's liens and security interests in Alamo Tempe's property will be deemed satisfied, extinguished, released, and discharged in full.

### 3. Class 3-C – Allowed Secured Claim of the SBA

This Class consists of the Allowed Secured Claim of the SBA against Alamo Tempe. The SBA asserts that the amount of its Claim is $150,030.82, and that its Claim is secured by a lien on substantially all of the assets of Alamo Tempe. Alamo Tempe disputes that the SBA's Claim is secured, to any extent, for two reasons. Initially, the SBA did not perfect its lien with the filing of a UCC-1 Financing Statement until May 17, 2020. This was after the Petition Date, and potentially in violation of the automatic stay of 11

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

U.S.C. § 362. Secondly, any lien asserted by the SBA would be junior to the liens of BNC and GetBackd. Alamo Tempe asserts that there is no equity in the value of its assets, after accounting for the senior Secured Claims of BNC and GetBackd. In accordance with 11 U.S.C. § 506(a), then, the entirety of the SBA's Claim against Alamo Tempe is Unsecured. The SBA's Claim against Alamo Gilbert, in its entirety, will be deemed to be Unsecured and treated as a part of, and in accordance with the treatment in the Plan for Class 5-A.

This Class is included herein only to provide disclosure regarding Alamo Tempe's liability to the SBA, and to promote transparency. For the reasons set forth above, Alamo Tempe asserts that Class 3-C is an empty Class and a nullity. Unless the Court subsequently orders that some portion of the SBA's Allowed Claim is Secured, this Class shall be disregarded for all purposes relating to Plan confirmation and extinguished by the Confirmation Order.

### D. Class 4: Alamo Chandler Secured Claims

#### 1. Class 4-A – Allowed Secured Claim of BNC

This Class consists of the Allowed Secured Claim of BNC against Alamo Chandler. BNC asserts that the amount of its Claim is $2,011,430.01, and that its Claim is secured by a first-position lien on substantially all of the assets of Alamo Chandler. Pursuant to Section 506(a) of the Bankruptcy Code, the amount of BNC's Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the parties. Any amount by which BNC's Allowed Claim exceeds the value of its collateral will constitute an Unsecured Claim, and be treated as part of Class 5-A.

Alamo Chandler will pay BNC's Allowed Secured Claim, in full, with interest accruing at the rate of 5% *per annum*, on the following schedule: No payments will be made until June 1, 2021. Commencing June 1, 2021, for a period of 12 months, Alamo Chandler will make monthly interest-only payments to BNC. Commencing June 1, 2022, the unpaid balance of BNC's Allowed Secured Claim will be paid in equal monthly installments of principle and interest over the course of 10 (ten) years. Any amount that remains owing to BNC on account of its Allowed Secured Claim shall be paid on, or before,

June 1, 2032.  The Debtors may pay all, or any portion, of the balance of BNC's Allowed Secured Claim at any time without penalty.  BNC will retain its liens and security interests in Alamo Chandler's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date.  Immediately upon payment in full of BNC's Allowed Secured Claim, all of BNC's liens and security interests in Alamo Chandler's property will be deemed satisfied, extinguished, released, and discharged in full.

### 2.  Class 4-B – Allowed Secured Claim of US Foods

This Class consists of the Allowed Secured Claim of US Foods against Alamo Chandler.  US Foods asserts that the amount of its Claim is $41,346.51.  Prior to the Petition Date, US Foods filed a UCC 1 Financing Statement indicating that its claim is secured by a lien on substantially all of the assets of Alamo Chandler.  Pursuant to Section 506(a) of the Bankruptcy Code, the amount of US Foods' Allowed Secured Claim will be limited to the value of its collateral, as determined by the Court or agreement of the parties.  Any amount by which US Foods' Allowed Claim exceeds the value of its collateral, after accounting for senior liens, will constitute an Unsecured Claim, and be treated as part of Class 5-A.

Alamo Chandler will pay US Foods' Allowed Secured Claim, in full, with interest accruing at the rate of 5% per annum, on the following schedule: No payments will be made until June 1, 2021.  Commencing June 1, 2021, for a period of 12 months, Alamo Chandler will make monthly interest-only payments to US Foods.  Commencing June 1, 2022, the unpaid balance of US Foods' Allowed Secured Claim will be paid in equal monthly installments of principle and interest over the course of 10 (ten) years.  Any amount that remains owing to US Foods on account of its Allowed Secured Claim shall be paid on, or before, June 1, 2032.  The Debtors may pay all, or any portion, of the balance of US Foods Allowed Secured Claim at any time without penalty.  US Foods will retain its liens and security interests in Alamo Chandler's property, with the same validity and priority, and to the same extent, that such liens existed on the Petition Date.  Immediately upon payment in full of US Foods' Allowed Secured Claim, all of US Foods' liens and security interests in

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2843182.v1

the Debtors' property will be deemed satisfied, extinguished, released, and discharged in full.

### 3. Class 4-C – Allowed Secured Claim of AmEx

This Class consists of the Allowed Secured Claim of AmEx against Alamo Chandler. AmEx asserts that the amount of its Claim is $183,825, and that its Claim is secured by a lien on substantially all of the assets of Alamo Chandler.

Alamo Chandler disputes that the AmEx's Claim is secured, to any extent. Any lien asserted by the AmEx would be junior to the liens of BNC and US Foods. Alamo Chandler believes that there is no equity in the value of its assets, after accounting for the senior Secured Claims of BNC and US Foods. In accordance with 11 U.S.C. § 506(a), then, the entirety of AmEx's Claim against Alamo Chandler is Unsecured. AmEx's Claim against Alamo Chandler, in its entirety, will be deemed to be Unsecured and treated as a part of, and in accordance with the treatment in the Plan for Class 5-A.

This Class is included herein only to provide disclosure regarding Alamo Chandler's liability to AmEx, and to promote transparency. For the reasons set forth above, Alamo Chandler asserts that Class 4-C is an empty Class and a nullity. Unless the Court subsequently orders that some portion of AmEx's Allowed Claim is Secured, this Class shall be disregarded for all purposes relating to Plan confirmation and extinguished by the Confirmation Order.

### 4. Class 4-D – Allowed Secured Claim of the SBA

This Class consists of the Allowed Secured Claim of the SBA against Alamo Chandler. The SBA asserts that the amount of its Claim is $150,030.82, and that its Claim is secured by a lien on substantially all of the assets of Alamo Chandler. Alamo Chandler disputes that the SBA's Claim is secured, to any extent, for two reasons. Initially, the SBA did not perfect its lien with the filing of a UCC-1 Financing Statement until May 17, 2020. This was after the Petition Date, and potentially in violation of the automatic stay of 11 U.S.C. § 362. Secondly, any lien asserted by the SBA would be junior to the liens of BNC, US Foods, and AmEx. Alamo Chandler asserts that there is no equity in the value of its

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

assets, after accounting for the senior Secured Claims of BNC, US Foods, and AmEx. In accordance with 11 U.S.C. § 506(a), then, the entirety of the SBA's Claim against Alamo Chandler is Unsecured. The SBA's Claim against Alamo Gilbert, in its entirety, will be deemed to be Unsecured and treated as a part of, and in accordance with the treatment in the Plan for Class 5-A.

This Class is included herein only to provide disclosure regarding Alamo Chandler's liability to the SBA, and to promote transparency. For the reasons set forth above, Alamo Chandler asserts that Class 4-D is an empty Class and a nullity. Unless the Court subsequently orders that some portion of the SBA's Allowed Claim is Secured, this Class shall be disregarded for all purposes relating to Plan confirmation and extinguished by the Confirmation Order.

### E. **Class 5: Allowed Unsecured Claims**

#### 1. **Class 5-A – Allowed Unsecured Claims**

This Class consists of all Allowed Unsecured Claims against all of the Debtors, including Unsecured deficiency Claims of allegedly Secured Creditors, Claims deriving from the rejection of executory contracts, any unpaid and unforgiven portion of any loan received by the Debtors under the Paycheck Protection Program, and any other Claim not included in any other Class in the Plan. After accounting for the payments due to the holders of all other Allowed Claims, in accordance with the terms of this Plan, each Debtor will devote the remainder of its Projected Disposable Income, as established in the Projections, to the payment of Claims against it and included within this Class for a period of three years, commencing on the Effective Date. Payments to Creditors holding Claims in Class 5-A will only be made from the Projected Disposable Income of the Debtor against which each Creditor has an Allowed Claim. Distributions on account of Allowed Claims in this Class will be made quarterly, and on a *pro rata* basis. Upon the third anniversary of the Effective Date, irrespective of the amount any holder of a Claim within this Class 5-A has received on account of such Claim, the unpaid balance of all of the Claims within this Class will be deemed extinguished and discharged in full.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

The Reorganized Debtors, at any time, may pay to holders of Claims in Class 5-A, the total amount of the unpaid payments to which each Claimant is entitled under the Plan, as reflected in the Projections, in full satisfaction of the Reorganized Debtors' obligations under Class 5-A of the Plan.

## F. Class 6: Equity Interests

### 1. Class 6-A – Allowed Interests

Class 6-A consists of the Allowed Interests in the Debtors. Each Debtor has filed a List of Equity Shareholders as part of its Schedules (each an "Equity Schedule"). The Equity Schedules reflect that, as of the Petition Date, PAH was the sole Class A equity holder in each of the Debtors, Ernest Cunningham and certain of his affiliates represent most, if not all, of the Class B equity holders in each of the Debtors, and other assorted investors represent all of the Class C equity holders in the Debtors. Upon Confirmation of the Plan, the pre-petition Class B equity interests in the Debtors will be canceled. All of the pre-petition Class C equity holders will retain their percentage equity interests, but will be promoted to Class B equity holders in the Reorganized Debtors. 50.5% of the Class A equity interests in each of the Reorganized Debtors will be owned by Mr. Cunningham or his nominees. PAH, or its nominee, will hold, as Class A equity interests, the remainder of the equity interests in each Reorganized Debtor, after accounting for the 50.5% Class A interests owned by Mr. Cunningham or his nominees and the percentage equity interests promoted to Class B. The holders of equity interests in the Reorganized Debtors will not receive any payment, on account of such equity interests, until after the third anniversary of the Effective Date.

## VII. MEANS FOR EXECUTING THE PLAN

### A. Funding or Sale

The Plan will be funded through the Debtors' continued operations. The Reorganized Debtors shall also have the ability, at any time, to enter into any sale, merger, or other transaction, so long as, upon the closing of any such transaction, the Secured Claims relating to any assets to be transferred, and the payments yet to be made to

Unsecured Creditors holding Claims against the implicated Reorganized Debtor under Class 5-A of the Plan, are paid in full.

**B.    Restructuring of Leases**

The Debtors have negotiated materially favorable rental terms with their landlords. The Gilbert Lease will be amended to call for monthly rental payments based solely upon the revenues generated by Alamo Gilbert. Alamo Gilbert will pay the Gilbert Landlord, on a monthly basis, 16.5% of its revenues during the remainder of 2020 and all of 2021, 17.5% during 2022, 19.5% during 2023, and 23.0% in 2024. These percentage payments will be all that is required to be paid by Alamo Gilbert under the Gilbert Lease. After 2024, Alamo Gilbert and the Gilbert Landlord will revisit the Gilbert Lease, and determine the rent to be paid thereunder going forward. Alamo Gilbert will assume the Gilbert Lease, as amended to be consistent with the terms described above.

The Tempe Lease will be amended to call for monthly rental payments based solely upon the revenues generated by Alamo Tempe. Alamo Tempe will pay the Tempe Landlord, on a monthly basis, 16.5% of its revenues during the remainder of 2020 and all of 2021, 18.5% during 2022, 20.5% during 2023, and 24.0% in 2024. These percentage payments will be all that is required to be paid by Alamo Tempe under the Tempe Lease. After 2024, Alamo Tempe and the Tempe Landlord will revisit the Tempe Lease, and determine the rent to be paid thereunder going forward. Alamo Tempe will assume the Tempe Lease, as amended to be consistent with the terms described above.

Alamo Chandler and the Chandler Landlord have negotiated an amendment to the Chandler Lease that will require Alamo Chandler to pay, in addition to Additional Rent, as that term is defined in the Chandler Lease, only 5% of Alamo Chandler's gross sales for the first six (6) months, $30,000 per month for the first year thereafter, $40,000 and 5% of sales per month for the following year, and $50,000 and 5% of sales per month for the next year. Alamo Chandler intends to file a motion to assume the Lease, as amended to incorporate the terms of the lease amendment that has been negotiated.

The revised rents to be paid to the Gilbert Landlord, Tempe Landlord, and Chandler

Landlord are dramatically lower than what was previously required under the Gilbert Lease, Tempe Lease, and Chandler Lease, respectively.

### C. Waiver and Deferral of Claims and Reallocation of Equity

The Gilbert Landlord and the Tempe Landlord share common elements of ownership and control with each other, and the Debtors. Prior to the Petition Date, Ernest Cunningham, a principal of the Gilbert Landlord and the Tempe Landlord, provided a letter of credit, in the amount of $1,250,000, in favor of the Chandler Landlord to secure Alamo Chandler's performance under the Chandler Lease. Subsequent to the Petition Date, the Chandler Landlord, or its nominee, drew down upon the full amount of that letter of credit. This resulted in Mr. Cunningham holding and asserting a Claim against Alamo Chandler in the amount of approximately $1,250,000 (the "LOC Claim," *see* Proof of Claim No. 14 on the Alamo Chandler claims register). Additionally, the Gilbert Landlord and Tempe Landlord have sizeable claims for unpaid rent under the Gilbert Lease and the Tempe Lease, respectively. Upon Confirmation of the Debtors' Plan, and in exchange for a 50.5% Class A equity interest in each of the Debtors, Mr. Cunningham will subordinate and defer payment of the LOC Claim until after the third anniversary of the Effective Date, and the Tempe Landlord and Gilbert Landlord will waive any past due balances under their Leases, and agree to the reduced rental obligations described in Section VII(B) above.

### D. Rejection of the Franchise Agreements

The Debtors intend to reject their pre-petition Franchise Agreements. The Debtors' use of "Alamo" marks and branding creates marginal value in Arizona. Moreover, the Franchise Agreements call for the payment of substantial fees, and prohibit the Debtors from selling pre-showing advertising to generate additional revenue. The Debtors believe that rejection of the Franchise Agreements, and the potential entry into a partnership with another cinema company, will have a significant and positive net effect on the Debtors' cash flow.

### E. Assumption of Guaranty Liability of PAH and Mr. and Mrs. Paschich

Because, after the Effective Date, PAH will no longer be the majority equity holder

2843182.v1

in the Debtors, the guaranty and joint liability that PAH and Mr. and Mrs. Paschich have for Claims against the Debtors will be assumed by the Tempe Landlord, the Gilbert Landlord, or an affiliate thereof that is acceptable to the implicated parties. Upon the assumption of these obligations, PAH and Mr. and Mrs. Paschich will be completely released and discharged from any guaranty or joint liability that they would otherwise have in connection with any Claim against the Debtors.

### F.    Post Confirmation Management

Mr. Paschich, acting individually or through an entity, will be responsible for the management of the Debtors after the Effective Date. In exchange for his services, Mr. Paschich will be paid $40,000 per year by each Debtor, from the Effective Date through the third anniversary of the Effective Date. Thereafter the Reorganized Debtors and Mr. Paschich will revisit Mr. Paschich's employment arrangement and compensation.

### G.    Suspension of Payments

All of the payments to Creditors contemplated in this Plan assume that the Debtors are able to continuously operate their Theaters. In the event that any of the Debtors is forced to close its Theater by virtue of any federal, state, county, or municipal regulation, order, or decree, that Debtor's obligation to make the payments to Creditors called for under the Plan will be completely suspended for the period of time during which its Theater is closed. Notwithstanding anything herein to the contrary, in the event that one or more of the Debtors is forced into closure and suspends payments in accordance with this section, that Debtor will extend, by a time period equal to the duration of the payment suspension, payments to Class 5-A beyond the third anniversary of the Effective Date.

### H.    Disbursing Agent

If the Plan is confirmed pursuant to Section 1191(a) of the Bankruptcy Code, the Reorganized Debtors will serve as their own Disbursing Agents and make distributions to holders of Allowed Claims in accordance with the Plan. If the Plan is confirmed pursuant to Section 1191(b) of the Bankruptcy Code, the Trustee shall serve as the disbursing agent and shall make distributions to holders of Allowed Claims under the Plan. In that event, the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Reorganized Debtors will provide the Trustee the funds necessary to make the payments called for hereunder not less than seven (7) days before such payment is due to be made. Notwithstanding anything to the contrary herein, payments to Creditors under the Plan will only be made from the revenues and property of the Debtor against which such Creditor has an Allowed Claim.

## I. <u>Documentation of Plan Implementation</u>

In the event any holder of an Allowed Secured Claim or any other lien or security interest in any of the Debtors' assets for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, or if any Allowed Interest Holder refuses to execute any documentation necessary to consummate the allocation of equity Interests called for under the Plan, the Reorganized Debtors may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and make the appropriate revisions in its records, and such recordation and revisions shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan, and the creation or transfer of any equity Interest. If the Reorganized Debtors deem advisable, they may also obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## VIII. LIQUIDATION ANALYSIS

If the Plan is not confirmed, and the Debtors' assets were liquidated under Chapter 7 of the Bankruptcy Code instead, it is unlikely that unsecured creditors would receive any distribution. The Debtors' assets consist, primarily, of the equipment and inventory necessary to operate the Theaters. Moreover, all of the Debtors' assets are subject to one, or more, asserted security interests. In the event of a closure and a subsequent liquidation, all of the Debtors' property concluded to be a fixture would transfer to the Debtors' landlords, and the remainder of the Debtors' property would be surrendered to the Debtors' secured creditors. As cinema-related equipment and inventory depreciates in value quickly, and given the anticipated dearth of people interested in joining, or increasing their exposure

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

to, the cinema industry in a post-COVID-19 economy, it is likely that the Debtors' property would sell for almost nothing in a liquidation sale. In all likelihood, only the Debtors' senior secured creditors would receive the proceeds of any liquidation sale, and they would still have significant deficiency claims, and all other Creditors and Interest Holders would receive nothing. The Debtors' ability to pay Unsecured Creditors anything is completely dependent on their ability to continue to generate revenue through the operation of their Theaters after the Effective Date.

## IX. EFFECT OF CONFIRMATION

If the Plan is confirmed under Section 1191(a) of the Bankruptcy Code, except as otherwise provided for in the Plan or the Confirmation Order, Confirmation of the Plan will discharge, effective as of the Confirmation Date, any and all debts of the Debtors that arose any time before the entry of the Confirmation Order including, but not limited to, all principal and all interest accrued thereon, pursuant to Bankruptcy Code section 1141(d)(1). The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

Pursuant to Section 1192 of the Bankruptcy Code, if the Plan is confirmed under Section 1191(b) of the Bankruptcy Code, as soon as practicable after completion by the Debtors of all payments due within the three years after the Effective Date, the Court shall grant the Debtors a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debts allowed under section 503 of the Bankruptcy Code and provided for in the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in this Plan shall be considered New Debt Obligations of the Reorganized Debtors that completely replace the Debtors' pre-confirmation obligations, and these New Debt Obligations shall not be considered in default unless and until the Reorganized Debtors default in making payments on the New Debt Obligations pursuant to the terms of the Plan. The New Debt

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

2843182.v1

Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors.

## X. OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A. Objections and Bar Date for Filing Objections

As soon as practicable, but in no event later than 90 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules.

### B. Settlement of Claims

The Debtors may use their cash on hand to consummate settlements of Claims against the Estate. Any settlement reached prior to the closure of the Debtors' Bankruptcy Cases shall be subject to approval of the Bankruptcy Court. Subsequent to the Closure of the Debtors' Bankruptcy Cases, the Debtors shall have the ability and discretion to negotiate and consummate the settlement of any Claim without approval of the Bankruptcy Court.

### C. Estimation of Claims

For purposes of calculating distributions provided for under the Plan, all Claims objected to shall be estimated by the Trustee, as disbursing agent, at an amount equal to (i) the amount, if any, determined by the Court pursuant to Bankruptcy Code section 502(c) as an estimate for distribution purposes; (ii) an amount agreed to between the Debtors and the Claimant; or (iii) any amount set forth as an estimate in the Plan. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim. Funds that would have otherwise been distributed to the holder of a Claim to which an objection was filed will be held by the Trustee until such time as that objection is adjudicated by the Court.

### D. Unclaimed Funds and Interest

Distribution to Claimants shall be mailed by the Trustee to the Claimants at the address appearing on the Claimant's proof of claim, or, if no proof of claims was filed, the

address included in master mailing matrix, unless the Claimant provides the Trustee with an alternate address. For a period of one year from the date that a distribution was to be made by the Trustee but has gone uncollected by the Claimant, the Trustee shall retain any distributions otherwise distributable hereunder that remain unclaimed or as to which the Trustee has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall be deemed abandoned, the Claimant's Claim shall be deemed disallowed, and the unclaimed funds shall be vested in the Reorganized Debtors for use in a manner consistent with the terms of this Plan.

## XI. NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of and no Allowed Claim, whether Secured, Unsecured, Administrative, or Priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest, or other monetary charges relating to or arising from any default or breach by the Debtors, and any Claim on account thereof shall be deemed disallowed, whether or not an objection is filed.

## XII. CLOSING OF CASE

Until this Bankruptcy Case is officially closed, the Reorganized Debtors will be responsible for filing post-confirmation reports required by the United States Trustee. If the Plan is confirmed pursuant to Section 1191(b) of the Bankruptcy Code, the Reorganized Debtors may move the Court to administratively close the Bankruptcy Cases, subject to reopening if and when entry of a discharge is appropriate.

## XIII. MODIFICATION OF THE PLAN

Without limiting their modification rights under Bankruptcy Code section 1193, the Debtors may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Reorganized Debtors may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Reorganized Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan, or in the

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Confirmation Order, if any may be necessary to carry out the purposes or intent of this Plan.

## XIV. REMEDIES FOR NON-PAYMENT

Upon default of any of the payment provisions contained in the Debtors' Plan, any Creditor not receiving the payments to which it is entitled may file a motion to reopen the Bankruptcy Cases and a notice of plan default with the Bankruptcy Court, and thereafter seek entry of an order by the Bankruptcy Court (a) authorizing such Creditor to foreclose upon any collateral securing its Claim, (b) revoking confirmation of the Plan, (c) converting the Bankruptcy Cases to proceedings under Chapter 7 of the Bankruptcy Code, and/or (d) authorizing any other remedy available at law or in equity.

## XV. JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for, including but not limited to, the following purposes:

1. To determine the classification of the Claims of any Creditors and the re-examination of any Claims that have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims.

2. To determine any Claims that are disputed by the Debtors or the Reorganized Debtors, whether such objections are filed before or after Confirmation, and to estimate any Unliquidated or Contingent Claims pursuant to Bankruptcy Code section 502(c)(1) upon request of the Debtors or any holder of a Contingent or Unliquidated Claim, and to make determinations regarding any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the Estate, and to determine and adjudicate all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors or the Reorganized Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4. To correct any defect, cure any omission or make any reconciliation of any

2843182.v1

inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5.    To address and approve any proposed modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.    To enforce, interpret, and promote the effectuation of the terms and conditions of this Plan.

7.    To enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtors or the Reorganized Debtors, and to impose such limitations, restrictions, terms, and conditions of such title, right, and power that this Court may deem necessary.

8.    To hear, determine, and resolve any disputes that may arise in connection with the Reorganized Debtors' efforts to market, manage, operate, finance, or sell any of the Debtors' property, and the manner in which any resulting proceeds are distributed.

9.    To enter an order closing this Bankruptcy Case, and thereafter enter an order reopening this Bankruptcy Case.

10.    To consider and adjudicate any request by the Reorganized Debtors for the entry of a discharge.

## XVI.  RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to Bankruptcy Code section 1123(b)(3), the Reorganized Debtors shall retain and may enforce any and all claims of the Debtors, except those claims specifically waived herein.  The retained causes of action include, but are not limited to, all avoidance actions, fraudulent conveyance actions, preference actions, and other claims and causes of action of every kind and nature whatsoever, arising before the Effective Date that have not been resolved or disposed of prior to the Effective Date, whether or not such claims or causes of action are specifically identified in this Plan.  Except as expressly set forth herein, the Debtors do not intend to waive or relinquish any cause of action by way of this Plan, and reserve the right to file a supplement to the Plan prior to Confirmation describing any causes of action the Debtors desire to specifically identify prior to Confirmation.

## XVII. EXCULPATION AND LIMITATION OF LIABILITY

Neither the Debtors nor the Trustee, nor any of their respective members, officers, directors, managers, attorneys, accountants or agents (the "Exculpated Parties" and each, an "Exculpated Party") shall have or incur any liability to any holder of a Claim or Interest, or to any other person or entity, for any post-petition act or omission in connection with, relating to, or arising out of, the Debtors' Bankruptcy Cases or any adversary proceeding or contested matter commenced therein, the formulation, negotiation, implementation, confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document entered into during the Bankruptcy Cases or otherwise created in connection with the Plan, the administration of the Plan or the property to be distributed under the Plan; provided, however, that nothing in this Section shall be construed to release or exculpate any Exculpated Party from willful misconduct, fraud or gross negligence as determined by a Final Order of the Bankruptcy Court.

## XVIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise provided herein, and unless rejected or assumed by a separate order of the Court prior to the Confirmation Date, the Debtors hereby reject any and all executory contracts listed in Schedule "G" of the respective Debtor's Schedules, as ultimately amended. Unless otherwise assumed prior to the Confirmation Date, every other executory contract and/or unexpired lease of the Debtors is hereby rejected. Proofs of Claim under Bankruptcy Code section 502(g) arising as a result of the rejection of executory contracts or unexpired leases by the Plan shall be filed no later than 30 days after the Confirmation Date. Any such Claims not timely filed and served shall be disallowed.

## XIX. REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date each Reorganized Debtor shall be vested with all property of its Estate free and clear of all liens, claims, charges, and other interests of Creditors arising prior to the Effective Date.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

2843182.v1

## XX. DEBTORS' RECOMMENDATION REGARDING THE PLAN

The Debtors recommend that all Creditors entitled to vote to accept the Plan do so. The Debtors' Plan will pay Creditors at least as much, and likely significantly more, than they will receive if the Plan is not confirmed. The most likely alternatives to confirmation of the Plan would be conversion of the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code or dismissal, and neither of those options would serve to benefit the Debtors' creditor body as a whole. A conversion to Chapter 7 would result in a dramatically reduced distribution to Secured and Unsecured Creditors. Dismissal of these Bankruptcy Cases would likely result in litigation, foreclosure, and execution on the Debtors' property, which would likely force the Debtors out of business and harm the prospects of any meaningful return to creditors. For all these reasons, the Debtors urge you to vote to accept their Plan.

## SIGNATURES ON THE FOLLOWING PAGE

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

DATED: October 6, 2020.

SACKS TIERNEY P.A.

By: *Wesley D. Ray*

Wesley D. Ray
Philip R. Rudd
Attorneys for Debtors

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on October 6, 2020, to:

Jennifer A. Giaimo  *
jennifer.a.giaimo@usdoj.gov
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Ste. 204
Phoenix, AZ  85003-1725

Edward Burr * Ted@MacRestructuring.com
10191 E. Shangri Law Rd.
Scottsdale, AZ  85260
*Subchapter V Trustee*

Kasey C. Nye *
knye@waterfallattorneys.com
WATERFALL ECONOMIDIS CALDWELL
HANSHAW & VILLAMANA, P.C.
Williams Center, Suite 800
5210 E. Williams Circle
Tucson, AZ  85711
*Attorneys for The Shoppes at Chandler Heights, LLC*

W. Scott Jenkins, Jr. *
scott.jenkins@quarles.com
Hannah R. Torres *
hannah.torres@quarles.com
QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
*Attorneys for BNC National Bank*

Leib M. Lerner * leib.lerner@alston.com
Douglas Harris *
douglas.harris@alston.com
ALSTON & BIRD LLP
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
*Attorneys for Alamo Drafthouse Cinemas, LLC*

John R. Worth *
jrw@forresterandworth.com
FORRESTER & WORTH, PLLC
2800 North Central, Suite 1200
Phoenix, AZ  85004
*Attorneys for Alamo Drafthouse Cinemas, LLC*

Jordan N. Hopkins *
Jordan.Hopkins@stearnsbank.com
STEARNS BANK N.A.
4191 2nd Street South
St. Cloud, MN  56301
*Attorneys for Stearns Bank, N.A.*

Scott B. Cohen * sbc@eblawyers.com
Patrick A. Clisham * pac@eblawyers.com
ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004
*Attorneys for Alamo Gilbert Holdings, LLC and Alamo Tempe Holdings, LLC*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Carolyn J. Johnsen *
cjjohnsen@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 North Central Ave., Ste. 1400
Phoenix, AZ  85004
*Attorneys for Austin Business Finance LLC
dba GetBackd*

Jeremy M. Goodman *
jeremy@goodmanlawpllc.com
GOODMAN LAW PLLC
P.O. Box 90758
Phoenix, AZ  85066
*Attorneys for Stearns Bank, N.A.*

Ed Bernatavicius *
Edward.k.Bernatavicius@usdoj.gov
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Ste. 204
Phoenix, AZ  85003-1725

Robert J. Miller * rjmiller@bclplaw.com
Khaled Tarazi * khaled.tarazi@bclplaw.com
BRYAN CAVE LEIGHTON PAISNER LLP
Two North Central Ave., Ste. 2100
Phoenix, AZ  85004-4406
*Attorneys for Wells Fargo Bank, N.A.*

Gil Hopenstand *
gil.hopenstand@sba.gov
U.S. SMALL BUSINESS ADMINISTRATION
312 N. Spring St., 5th Floor
Los Angeles, CA 90012

Richard H. Herold *
rherold@spenderfane.com
SPENCER FANE LLP
2415 E. Camelback Road, Ste. 600
Phoenix, AZ  85016
*Attorneys for Comerica Bank*

Shraddha Bharatia
Claims Administrator
BECKET & LEE, LLP
P.O. Box 3002
Malvern, PA  19355-0702
*Representative of American Express
National Bank*

By: ___/s/ Cathie Bernales_____

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

# EXHIBIT A

**Alamo Tempe, et al.**
**Financial Projections**

| | Tempe 2020 Q4 ONLY | Tempe 2021 | Tempe 2022 | Tempe 2023 | Gilbert 2020 Q4 ONLY | Gilbert 2021 | Gilbert 2022 | Gilbert 2023 | Chandler 2020 Q4 ONLY | Chandler 2021 | Chandler 2022 | Chandler 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Net Sales | $ 870,000 | $ 4,495,000 | $ 5,075,000 | $ 5,836,250 | $ 870,000 | $ 4,495,000 | $ 5,075,000 | $ 5,836,250 | $ 740,000 | $ 4,000,000 | $ 4,370,000 | $ 5,025,500 |
| Total Cost of Goods Sold | 272,364 | 1,407,217 | 1,588,793 | 1,827,112 | 272,364 | 1,407,217 | 1,588,793 | 1,827,112 | 225,740 | 1,220,193 | 1,333,050 | 1,526,825 |
| Gross Margin | 597,636 | 3,087,783 | 3,486,207 | 4,009,138 | 597,636 | 3,087,783 | 3,486,207 | 4,009,138 | 514,260 | 2,779,807 | 3,036,950 | 3,498,675 |
| | | | | | | | | | | | | |
| **Opex** | | | | | | | | | | | | |
| Total Payroll | 218,518 | 1,177,965 | 1,285,075 | 1,428,371 | 218,518 | 1,177,965 | 1,285,075 | 1,428,371 | 201,816 | 1,064,727 | 1,131,787 | 1,268,436 |
| Total Promotional | 18,691 | 106,202 | 113,454 | 122,972 | 18,691 | 106,202 | 113,454 | 122,972 | 16,565 | 89,989 | 91,839 | 135,684 |
| Total Insurance | 27,144 | 108,576 | 108,576 | 108,576 | 27,144 | 108,576 | 108,576 | 108,576 | 21,694 | 86,778 | 86,778 | 86,778 |
| Total Utilites | 25,332 | 130,489 | 124,801 | 130,489 | 25,332 | 130,489 | 124,801 | 130,489 | 23,018 | 153,100 | 125,357 | 150,145 |
| Total Repair & Maintenance | 42,094 | 248,561 | 280,421 | 306,423 | 42,094 | 248,561 | 268,404 | 306,423 | 65,284 | 317,704 | 327,155 | 424,661 |
| Total Facility Expense | 193,271 | 941,349 | 1,139,001 | 1,397,150 | 193,271 | 941,349 | 1,088,251 | 1,338,788 | 88,579 | 376,704 | 476,841 | 597,085 |
| Merchant Service Fees | 30,233 | 156,181 | 176,331 | 202,780 | 30,233 | 156,181 | 176,331 | 202,780 | 23,893 | 129,135 | 141,079 | 162,241 |
| Total Office Expense | 5,118 | 24,981 | 27,559 | 30,943 | 5,118 | 24,981 | 27,559 | 30,943 | 30,731 | 166,094 | 181,456 | 51,212 |
| Total Other Expenses | 29,854 | 113,769 | 119,667 | 127,737 | 29,854 | 113,100 | 119,287 | 127,002 | 28,234 | 111,882 | 118,215 | 130,605 |
| Total EBITDTA Expenses | 590,254 | 3,008,073 | 3,374,883 | 3,855,441 | 590,254 | 3,007,405 | 3,311,737 | 3,796,344 | 499,814 | 2,496,112 | 2,680,506 | 3,006,847 |
| | | | | | | | | | | | | |
| Net EBITDA | 7,382 | 79,710 | 111,324 | 153,697 | 7,382 | 80,379 | 174,471 | 212,794 | 14,445 | 283,695 | 356,443 | 491,828 |
| Net EBITDA check | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | |
| Depreciation | 23,250 | 93,000 | 93,000 | 93,000 | 23,250 | 93,000 | 156,264 | 156,264 | 56,257 | 225,028 | 225,028 | 225,028 |
| Interest Expense | - | 31,668 | 41,400 | 38,161 | - | 53,708 | 70,214 | 64,721 | - | 131,330 | 168,400 | 154,372 |
| Net Income | $ (15,868) | $ (44,957) | $ (23,076) | $ 22,536 | $ (15,868) | $ (66,330) | $ (52,007) | $ (8,190) | $ (41,812) | $ (72,663) | $ (36,985) | $ 112,428 |
| | | | | | | | | | | | | |
| Principal Payment | $ - | $ - | $ 49,769 | $ 69,323 | $ - | $ - | $ 84,407 | $ 117,571 | $ - | $ 75,721 | $ 238,116 | $ 295,628 |
| | | | | | | | | | | | | |
| **Cash Flow** | | | | | | | | | | | | |
| Net Income | $ (15,868) | $ (44,957) | $ (23,076) | $ 22,536 | $ (15,868) | $ (66,330) | $ (52,007) | $ (8,190) | $ (41,812) | $ (72,663) | $ (36,985) | $ 112,428 |
| Add back Depreciation | 23,250 | 93,000 | 93,000 | 93,000 | 23,250 | 93,000 | 156,264 | 156,264 | 56,257 | 225,028 | 225,028 | 225,028 |
| Subtract Principal | - | - | (49,769) | (69,323) | - | - | (84,407) | (117,571) | - | (75,721) | (238,116) | (295,628) |
| Projected Disposable Income | $ 7,382 | $ 48,043 | $ 20,155 | $ 46,213 | $ 7,382 | $ 26,670 | $ 19,849 | $ 30,503 | $ 14,445 | $ 76,644 | $ (50,073) | $ 41,829 |