Wesley D. Ray (SBN 026351)
Wesley.Ray@SacksTierney.com
Philip R. Rudd (SBN 014026)
Philip.Rudd@SacksTierney.com
Sierra M. Minder (SBN 035795)
Sierra.Minder@SacksTierney.com
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600
Facsimile: 480.970.4610
*Attorneys for the Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

# THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ALAMO CHANDLER, LLC,<br><br>ALAMO GILBERT, LLC,<br><br>ALAMO TEMPE, LLC,<br><br>        Debtors. | Case No. 2:20-bk-05017-DPC<br><br>Joint Administration With<br>Cases No. 2:20-bk-05020-DPC<br>           2:20-bk-05026-DPC<br><br>Chapter 11 Proceedings |
| THIS FILING APPLIES TO:<br><br>  X  All Debtors<br>    Alamo Chandler, LLC<br>    Alamo Gilbert, LLC<br>    Alamo Tempe, LLC | **MOTION TO APPROVE SETTLEMENT BETWEEN DEBTORS AND ALAMO DRAFTHOUSE CINEMAS, LLC PURSUANT TO RULE 2019** |

Alamo Chandler, LLC ("Alamo Chandler"), Alamo Gilbert, LLC, ("Alamo Gilbert"), and Alamo Tempe, LLC ("Alamo Tempe" and together with Alamo Chandler and Alamo Gilbert, the "Debtors"), as debtors and debtors in possession in the above-captioned

3067528v2

bankruptcy cases, by and through undersigned counsel and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, hereby move this Court for an order approving that certain Settlement Agreement and Mutual Release (the "Settlement Agreement, a copy of which is attached hereto as **Exhibit "A"**) entered into by and between the Debtors, Paschich Alamo Holdings, LLC, and Craig and Kimberly Paschich, on one hand, and Alamo Drafthouse Cinemas, LLC ("ADC") and ALMO Holdings, LLC ("AH," and with ADC, the "ADC Parties") on the other hand, collectively (the "Parties").

By way of the Settlement Agreement, subject to the approval of this Court and the United States Bankruptcy Court for the District of Delaware, which is presiding over ADC's chapter 11 case ("ADC's Chapter 11 Case"), the Parties have agreed to resolve and release certain claims amongst them as set forth more specifically in the Settlement Agreement, including those arising from the Debtors' rejection of their franchise agreements with ADC. The various claims and disputes resolved by the Settlement Agreement are embodied in, among other things, ADC's Objection to Debtors' Second Joint Plan of Reorganization (the "Objection"), the adversary proceeding in these Cases, an objection filed in ADC's Chapter 11 Case relating to the assumption and assignment of the Debtors' franchise agreements, and litigation in the United States District Court for the Western District of Texas against the Debtors' manager and owner. The Settlement Agreement, once approved and consummated, will resolve these adversarial legal proceedings, and facilitate the prompt and consensual confirmation of the Debtors' pending plan of reorganization.

Through mediation of their disputes, as reflected in the Settlement Agreement, the Parties have agreed that the ADC Parties will have allowed claims against the Debtors in the total amount of $35,221,428.18 for pre-petition franchise fees, rejections damages, and damages arising from breach of certain non-compete provisions (the "Allowed Claims"). Under the Settlement Agreement, ADC will withdraw its Objection and the Allowed Claims will be satisfied in full for the reduced sum of $3,250,000.00. It is the Debtors' belief that continued defense of the claims asserted by the ADC Parties, not to mention the associated costs and delay, pose significant risk to the Debtors' estates. The Debtors have determined,

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

based upon their reasonable business judgment, that the Settlement Agreement is fair, reasonable, and in the best interests of their estates, and therefore respectfully move the Court for entry of an order approving the Settlement Agreement. This motion is supported by the following memorandum of point and authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      JURISDICTION AND STATUTORY PREDICATES**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

2.      This motion presents a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (O).

3.      The relief requested is authorized by Fed. R. Bankr. P. Rule 9019.

**II.     FACTUAL BACKGROUND**

4.      On May 13, 2020 (the "<u>Petition Date</u>"), the Debtors in these jointly administered Chapter 11 bankruptcy cases filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

5.      Between April 2015 and December 2018, each Debtor entered into a franchise agreement with ADC to operate a movie theater (collectively the "<u>Theaters</u>") under the Alamo Drafthouse Cinema brand ("<u>Franchise Agreements</u>").

6.      On July 17, 2020, ADC filed a proof of claim in each of the Debtor's Bankruptcy Cases for unpaid pre-petition fees and costs due under the Franchise Agreements, for a total combined claim of $1,021,428.18 ("<u>Proof of Claim</u>").

7.      On March 10, 2021, Debtors filed their *Second Amended Joint Plan of Reorganization Dated March 10, 2021* (the "<u>Plan</u>").

8.      The Plan provides for rejection of the Franchise Agreements and the operation of the Theaters outside of the Alamo Drafthouse Cinema brand.

9.      On April 19, 2021, ADC filed its Objection to the Debtors' Plan and filed its *Complaint for Declaratory and Injunctive Relief* against the Debtors in this Court (the "<u>Adversary</u>"), to enforce non-competition covenants in the Franchise Agreements.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

10. On March 3, 2021, ADC, along with its parent company and affiliates, filed petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court"). ADC's chapter 11 cases are being jointly administered under Case No. 21-10474 (MFW).

11. On May 3, 2021, the Delaware Bankruptcy Court approved the sale (the "Sale") of substantially all of the assets of ADC to AH. On April 7, 2021, the Debtors objected to the assumption and assignment of their Franchise Agreements to AH as part of the Sale (the "Assumption Objection"), and on April 22, 2021, the Debtors filed a statement and reservation of rights to the Sale (together with the Assumption Objection, the "Sale Objection"). The Delaware Bankruptcy Court's order approving the Sale provided that the Sale Objection was adjourned to a date to be determined and agreed to by ADH, AH, and the Debtors (Case No. 21-10474 (MFW), D.I. 436 ¶ 37). On May 28, 2021, the Sale closed, and AH acquired all rights, title and interest in and to substantially all of the assets of ADC.

12. On March 2, 2021, ADC filed a complaint against PAH and Mr. and Mrs. Paschich in the U.S. District Court for Western District of Texas, Case No. 21-00200 asserting claims for breach of contract and seeking injunctive relief to enforce the noncompetition covenants in the Development Agreements (the "Texas Litigation").

13. ADC and AH maintain that they are entitled to the full amount of the Proof of Claim and to enforce the non-competition covenants in the Franchise Agreements. The Debtors dispute liability as to some or all of the Proof of Claim and any damages collectible through the Adversary and deny that the non-competition covenants are enforceable.

14. On May 25, 2021, the Parties mediated their disputes before attorney Michael McGrath, and reached a settlement, which is memorialized by the Settlement Agreement.

15. The Settlement Agreement effectively resolves all current disputes between the Parties.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

16.     As salient to the Debtors, the terms of the Parties' agreement are set forth in the Settlement Agreement and are summarized as follows[1]:

    a. The Settlement Agreement shall become effective immediately upon the satisfaction of the conditions precedent listed in the Settlement Agreement.

    b. The ADC Parties will have Allowed Claims in the Debtors' Bankruptcy Cases for the total amount of $35,221,428.18 for pre-petition franchise fees, rejections damages, and damages arising from breach of certain non-compete provisions.

    c. ADC will withdraw its Objection to the Debtors' Plan.

    d. The Adversary and the Texas Litigation will be dismissed.

    e. ADC's Allowed Claim will be satisfied in full by payment of $3,250,000.00, made on, or before, the Effective Date of the Debtors' Plan. The Debtors intend to pay this amount, in roughly equal shares and from funds they receive under the Shuttered Venue Operator's Grant program administered by the SBA. The Debtors' expectation is that the amount of the funds received under this program will approximate $9 million, in aggregate. As called for under the Settlement Agreement, the Debtors have agreed to escrow the funds to be paid to the ADC Parties under the Settlement Agreement in the trust account of their counsel, pending approval of the Settlement Agreement and confirmation of the Plan.

    f. Upon the Effective Date of the Plan, the Franchise Agreements will be rejected and terminated, and the Debtors will be free to operate their Theaters in whatever manner they see fit, whether it be as independent, in

---

[1] This summary is for informational purposes only and is not intended to modify in any way the terms and conditions of the Settlement Agreement. To the extent that there is any inconsistency between the terms described herein and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control. Any capitalized terms used in this section not otherwise defined herein shall be given the meanings ascribed to them in the Settlement Agreement.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

5

partnership with another cinema company, or as part of a subsequent franchise.

17.     The Debtors believe that, in the absence of the Settlement Agreement, their estates would bear significant risk in defending against ADC Parties' claims.  In fact, if ADC were to prevail in the positions taken in its Objection, the Debtors could be forced into a liquidation.

18.     As such, the Debtors submit that the terms of the Settlement Agreement are fair and equitable, in the best interests of the Debtors' estates, and represent a proper exercise of the business judgment of the Debtor's management.

## III.     LEGAL ARGUMENT

"On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "The bankruptcy court has great latitude in approving compromise agreements" that are fair and equitable. *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988). "The law favors compromise and not litigation for its own sake[.]" *In re A & C Props.*, 784 F.2d 1377, 1381 (9th Cir. 1986).

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement is fair and equitable: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises." *In re Woodson*, 839 F.2d at 620 (citations omitted). A settlement does not have to serve, or even touch upon, each of the aforementioned factors in order to be approved, "provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 417 (N.D. Cal. 2004). The responsibility of the bankruptcy judge is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness, not to decide the numerous questions of law and fact that may be raised regarding the settlement. *Id.* (quoting *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

S.D.N.Y. 1991)); *In re Teltronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir. 1985); *In re Schmitt*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997). Finally, while the Court should consider the reasonable views of creditors, "objections do not rule. "It is well established that compromises are favored in bankruptcy." *In re Lee Way Holding, Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990) (internal citation omitted).

The Debtors submit that the Settlement Agreement is reasonable and in the best interests of their estates, and should be approved. The Settlement Agreement provides a fair and efficient resolution of a wide array of legal disputes arising in connection with the Debtors' rejection of the Franchise Agreements and the application of the non-compete provisions contained therein. Absent the Settlement Agreement, the Debtors would face complex and expensive litigation requiring extensive discovery. If the Settlement Agreement is not approved, the Debtors and their creditors will be left in limbo while they await resolution of the litigation, and watch the Debtors' bankruptcy estates erode by the incurrence of administrative expenses.

Not only are these disputes expensive and time consuming, though, they are also fraught with risk for the Debtors and their estates. If ADC's position were to be adopted and the Objection sustained, the Debtors would be forced to persist under the Franchise Agreements, which the Debtors believe is implausible, or to close their Theaters. This could likely lead to a liquidation of the Debtors' bankruptcy estates. The Settlement Agreement is the only mechanism by which the Debtors can be assured of their ability to operate their Theaters going forward, in the manner the Debtors believe necessary to facilitate the revenues prerequisite to the payment of all other creditors under the Plan. Put simply, without the Settlement Agreement, there would be a real possibility that all other parties in interest would receive little, or nothing, on account of their claims.

## IV.    CONCLUSION

Based upon the foregoing, the Debtors respectfully request that the Court enter an order approving the Settlement Agreement and authorizing the Debtors to take whatever

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

actions may be necessary to consummate the Settlement Agreement and otherwise carry it into effect.

DATED: July 15, 2021.

SACKS TIERNEY P.A.

By: _Wesley D. Ray_
Wesley D. Ray
Philip R. Rudd
Sierra M. Minder
Attorneys for Debtors

**COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") on July 15, 2021, to:

Jennifer A. Giaimo  *
jennifer.a.giaimo@usdoj.gov
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Ste. 204
Phoenix, AZ  85003-1725

Edward Burr *
Ted@MacRestructuring.com
10191 E. Shangri Law Rd.
Scottsdale, AZ  85260
*Subchapter V Trustee*

Kasey C. Nye *
knye@waterfallattorneys.com
WATERFALL ECONOMIDIS CALDWELL
HANSHAW & VILLAMANA, P.C.
Williams Center, Suite 800
5210 E. Williams Circle
Tucson, AZ  85711
*Attorneys for The Shoppes at Chandler Heights, LLC*

W. Scott Jenkins, Jr. *
scott.jenkins@quarles.com
Hannah R. Torres *
hannah.torres@quarles.com
QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
*Attorneys for BNC National Bank*

Leib M. Lerner * leib.lerner@alston.com
Douglas Harris *
douglas.harris@alston.com
ALSTON & BIRD LLP
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
*Attorneys for Alamo Drafthouse Cinemas, LLC*

John R. Worth *
jrw@forresterandworth.com
FORRESTER & WORTH, PLLC
2800 North Central, Suite 1200
Phoenix, AZ  85004
*Attorneys for Alamo Drafthouse Cinemas, LLC*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

Jordan N. Hopkins *
Jordan.Hopkins@stearnsbank.com
STEARNS BANK N.A.
4191 2nd Street South
St. Cloud, MN  56301
*Attorneys for Stearns Bank, N.A.*

Scott B. Cohen * sbc@eblawyers.com
Patrick A. Clisham * pac@eblawyers.com
ENGELMAN BERGER, P.C.
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004
*Attorneys for Alamo Gilbert Holdings, LLC
and Alamo Tempe Holdings, LLC*

Carolyn J. Johnsen *
cjjohnsen@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 North Central Ave., Ste. 1400
Phoenix, AZ  85004
*Attorneys for Austin Business Finance
LLC dba GetBackd*

Jeremy M. Goodman *
jeremy@goodmanlawpllc.com
GOODMAN LAW PLLC
P.O. Box 90758
Phoenix, AZ  85066
*Attorneys for Stearns Bank, N.A.*

Ed Bernatavicius *
Edward.k.Bernatavicius@usdoj.gov
OFFICE OF THE U.S. TRUSTEE
230 North First Avenue, Ste. 204
Phoenix, AZ  85003-1725

Robert J. Miller * rmiller@buchalter.com
Khaled Tarazi * ktarazi@buchalter.com
BUCHALTER
16435 North Scottsdale Rd., Ste. 440
Scottsdale, AZ  85254-1754
*Attorneys for Wells Fargo Bank, N.A.*

Gil Hopenstand *
gil.hopenstand@sba.gov
U.S. SMALL BUSINESS ADMINISTRATION
312 N. Spring St., 5th Floor
Los Angeles, CA 90012

Richard H. Herold *
rherold@spenderfane.com
SPENCER FANE LLP
2415 E. Camelback Road, Ste. 600
Phoenix, AZ  85016
*Attorneys for Comerica Bank*

Shraddha Bharatia
Claims Administrator
BECKET & LEE, LLP
P.O. Box 3002
Malvern, PA  19355-0702
*Representative of American Express
National Bank*

Kristin McDonald *
Kristin.mcdonald@azag.gov
OFFICE OF THE ATTORNEY GENERAL
2005 North Central Avenue
Phoenix, AZ  85004-1592
*Attorneys for State of Arizona, Dept of
Revenue*

By:    */s/Michelle L. Curtsinger*

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into as of July 15, 2021, by Alamo Chandler, LLC ("Chandler"), Alamo Gilbert, LLC ("Gilbert"), Alamo Tempe, LLC ("Tempe" and, together with Chandler and Gilbert, the "Debtors"), Paschich Alamo Holdings, LLC ("PAH"), Craig Paschich ("Mr. Paschich"), and Kimberly Paschich ("Ms. Paschich" and, together with PAH and Mr. Paschich, the "Texas Defendants" and, together with Debtors, the "Paschich Parties"), on the one hand, and Alamo Drafthouse Cinemas, LLC ("ADC") and ALMO Holdings, LLC ("AH" and, together with ADC, the "ADC Parties"), on the other hand. Collectively, the Paschich Parties and ADC Parties may be referred to as the "Parties" and each of Chandler, Gilbert, Tempe, PAH, Mr. Paschich, Ms. Paschich, ADC and AH individually, a "Party."  This Agreement is made with reference to the following facts:

## RECITALS

A.    On or about April 29, 2015, ADC and the Texas Defendants executed a Development Agreement for the exclusive right to obtain franchise agreements with ADC and establish and operate franchised venues in the State of Arizona (the "Development Agreement").

B.    In furtherance of the Development Agreement, the Texas Defendants formed the three Debtors to enter into franchise agreements with ADC.

C.    ADC, as franchisor, and Chandler, as franchisee, are parties to that certain Alamo Drafthouse Cinemas, LLC Franchise Agreement dated April 29, 2015 ("Chandler Franchise Agreement") pursuant to which Chandler operates an Alamo Drafthouse Cinema ("Chandler Theater").

D.    ADC, as franchisor, and Gilbert, as franchisee, are parties to that certain Alamo Drafthouse Cinemas, LLC Franchise Agreement dated December 17, 2018 ("Gilbert Franchise Agreement") pursuant to which Gilbert operates an Alamo Drafthouse Cinema ("Gilbert Theater").

E.    ADC, as franchisor, and Tempe, as franchisee, are parties to that certain Alamo Drafthouse Cinemas, LLC Franchise Agreement dated August 1, 2017 ("Tempe Franchise Agreement" and together with Chandler Franchise Agreement and Gilbert Franchise Agreement, the "Franchise Agreements") pursuant to which Tempe operates an Alamo Drafthouse Cinema ("Tempe Theater" and together with Chandler Theater and Gilbert Theater, the "Theaters").

F.    On May 13, 2020, Chandler, Gilbert and Tempe each filed chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Arizona, initiating cases under 11 U.S.C. §101 et seq. (the "Bankruptcy Code"), Chandler case number 20-05017, Gilbert case number 20-05020, and Tempe case number 20-05026 (the "Bankruptcy Cases").  The Bankruptcy Cases are being jointly administered under the Chandler case number.

G.    On July 17, 2020, ADC filed a proof of claim in each of the three separate Bankruptcy Cases for unpaid pre-petition fees and costs due under the Franchise Agreements, namely, Proof of Claim No. 11 in the amount of $544,983.53 in the Chandler bankruptcy case,

Proof of Claim No. 9 in the amount of $101,542.06 in the Gilbert bankruptcy case, and Proof of Claim No. 12 in the amount of $374,902.59 in the Tempe bankruptcy case, for a total combined claim of $1,021,428.18 ("Proof of Claim").

H.        On February 23, 2021, ADC terminated the Development Agreement.  On March 2, 2021, ADC filed a complaint ("Complaint") against the Texas Defendants in the U.S. District Court for Western District of Texas, Case No. 21-00200 ("Texas Case"), asserting claims against the Texas Defendants for breach of contract and seeking injunctive relief to enforce the non-competition covenants in the Development Agreement.  The Texas Defendants have filed a partial motion to dismiss, which has yet to be ruled upon by the District Court.

I.        On March 3, 2021, ADC's parent Alamo Drafthouse Cinemas Holdings, LLC and thirty-three (33) affiliated companies including ADC each filed petitions in the United States Bankruptcy Court for the District of Delaware.  Those cases are being jointly administered under Case No. 21-10474 (the "Delaware Bankruptcy").

J.        On March 10, 2021, Debtors filed their Second Amended Joint Plan of Reorganization Dated March 10, 2021 (as ultimately modified, the "Plan").  On April 19, 2021, ADC filed its Objection to Debtor's Second Amended Joint Plan of Reorganization ("Objection").  On that same date, ADC also filed its Complaint for Declaratory and Injunctive Relief against the Debtors in the Bankruptcy Court for the District of Arizona, Adversary Case No. 21-00099 ("Adversary"), to enforce non-competition covenants in the Franchise Agreements.

K.        On May 3, 2021, the Delaware Bankruptcy Court approved the sale (the "Sale") of substantially all of the assets of ADC to AH.  On May 28, 2021, the Sale closed and AH acquired all rights, title and interest in and to substantially all of the assets of ADC.

L.        ADC Parties maintain that they are entitled to the full amount of the Proof of Claim and to enforce the non-competition covenants in the Development Agreement and Franchise Agreements.  The Debtors and Texas Defendants dispute liability as to some or all of the Proof of Claim and any damages collectible through the Complaint or Adversary, and deny that the non-competition covenants are enforceable.

M.        In addition to the documents described above, the Parties have filed and/or served such other and various documents including pleadings, discovery requests and/or responses.  In addition, ADC submitted three ballots, one for each of its proofs of claim against the three separate Debtors, voting to reject the Plan.

N.        On April 21, 2021, Debtors filed their Ballot Report Pursuant to Local Rule 3018-1 ("Ballot Report"), which indicated that of the thirteen classes of claims and interest in the Plan, two classes of claims were deemed to have accepted the Plan, five classes voted to affirmatively or provisionally accept the Plan, four classes are empty classes that Debtors assert should be disregarded, and one class (Class 5-A Allowed Unsecured Claims) rejected the Plan.  The only votes in Class 5-A to reject the Plan are the votes of ADC.

O.     On May 25, 2021, the Parties mediated their disputes before attorney Michael McGrath, and reached a settlement, which is memorialized by this Agreement.  Subject to Bankruptcy Court approval (as may be necessary for any of the Parties pursuant to FRBP 9019), the Parties have agreed to settle all of the disputes between them upon the terms and subject to the conditions set forth in this Agreement.

NOW THEREFORE, in consideration of the foregoing facts and the mutual covenants, conditions, promises and agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties agree as follows:

## **AGREEMENT**

1.     **Terms of Settlement.**

1.1     Conditions Precedent.  Conditions precedent to the effectiveness of this Agreement ("Conditions Precedent") are:

a.     The Debtors file a modification of the Plan or an amended Plan (either being a "Modification"), in a form reasonably acceptable to ADC, which incorporates the material terms of this Agreement including the receipt and distribution of the Settlement Amount (defined below) to ADC Parties on or before the Effective Date of the Plan, and in no way includes any provision that materially adversely affects the interests of ADC Parties.

b.     On or before July 15, 2021, the Debtors file a motion, in a form reasonably acceptable to ADC Parties, seeking approval of this Agreement ("9019 Motion").

c.     On or before July 15, 2021, ADC files a motion, in a form reasonably acceptable to Debtors, seeking approval of this Agreement ("DE Approval Motion").

d.     The Plan (including the Modification) is confirmed without any material change in the treatment of the ADC Parties.

e.     The 9019 Motion is approved.

f.     The DE Approval Motion is approved.

g.     The Debtors receive approximately $9,000,000.00, in aggregate to the Debtors prior to the Effective Date of the Plan by the U.S. Small Business Administration, under the Shuttered Venue Operators Grant ("SVOG Funds").

h.     The Debtors pay, and ADC Parties receive, the Settlement Amount on or before the Effective Date of the Plan.

i.     The Debtors pay, and ADC Parties receive, any Past Due Franchise Fees (as defined below).

j.     Any Orders confirming the Plan, approving the 9019 Motion, and approving the DE Approval Motion are final and appealable orders and, whether or not any appeal is pending, no court has entered any order staying the Effective Date (as defined in the

3

Plan) of the Plan, the 9019 Motion or the DE Approval Motion and no such motion for stay is pending.

This Agreement shall become null and void and of no force or effect if these conditions do not occur, and the Parties shall be deemed to be in the same position as they were in prior to any mediation and/or settlement between and among them and the filing of the Modification, 9019 Motion and DE Approval Motion, and as if those filings and this Agreement did not occur.

1.2     Allowed Claims.  Debtors agree that ADC Parties shall have allowed claims in the Bankruptcy Cases for the following amounts ("Allowed Claims"), which is not subject to any defense, setoff, or counterclaim:

a.     $1,021,428.18 for pre-petition franchise fees in accordance with the Proof of Claim;

b.     $9,200,000.00 for rejection damages arising from the rejection of the Franchise Agreements; and

c.     $25,000,000.00 for damages arising from the breach of the non-competition covenants in the Franchise Agreements.

ADC Parties shall not be required to file any other or additional proofs of claim and/or transfers of claim from ADC to AH with regards to the Allowed Claims, and the Allowed Claims shall be deemed filed upon Debtors' filing of the 9019 Motion with the Bankruptcy Court.

1.3     Settlement Amount. Debtors shall satisfy the Allowed Claims in full for the reduced sum of $3,250,000.00 ("Settlement Amount"), without interest, by paying ADC Parties the Settlement Amount in cash on or before the Effective Date of the Plan.

1.4     Rejection and Termination of Franchise Agreements.  The Modification shall provide that the Franchise Agreements are rejected and terminated as of the Effective Date of the Plan.  For the avoidance of doubt, and without limitation, although the Franchise Agreements are being terminated hereunder, the Parties understand and agree that except for the obligations in this Agreement, the releases provided in Section 2 below shall be effective as to any and all post-termination claims that may have otherwise arisen under the Development Agreement or the Franchise Agreements.  The rejection and termination of the Franchise Agreements shall also serve to eliminate any security interests, liens, options, rights of refusal, exclusive development rights, non-compete covenants and other rights or remedies that may otherwise be held by (i) the ADC Parties with respect to the Debtors and their property including leasehold interest or (ii) the Paschich Parties, with respect to the ADC Parties and their property or leasehold interests.

1.5     Acceptance of Plan.  After the Modification and 9019 Motion are filed with the Court, ADC Parties will cast ballots accepting the Plan, subject to the Conditions Precedent, and will otherwise support confirmation of the Plan provided that the ADC Parties' treatment in the Plan is as provided in this Agreement.

1.6     Payment of Administrative Expenses and Ordinary Course Remittals. Debtors shall pay on or before the Effective Date of the Plan all post-petition franchise fees and/or other fees normally due under the Franchise Agreements that are due as of the Effective Date of the Plan ("Past Due Franchise Fees"), and shall pay any other accrued post-petition franchise fees that become due on or after the Effective Date of the Plan in the ordinary course.  The ADC Parties shall remit to the Debtors, in the ordinary course, any amounts to which Debtors are entitled under

the Franchise Agreements on account of the Debtors' operation of the Theaters through the Effective Date of the Plan. Payment of the ordinary course expenses or remittals shall be sent to ADC Parties or the Debtors, as applicable, at their ordinary billing and payment addresses and on an ordinary billing or remittal cycle. ADC Parties shall not be required to file any application for payment of administrative expense. Any dispute regarding payment of administrative expenses or remittals to the Debtors that cannot be resolved by the Parties shall be determined by the Court on noticed motion, and the prevailing Party shall be entitled to its fees and costs in accordance with the provisions of this Agreement.

       1.7    <u>Motions to Dismiss</u>. After receipt in full of the Settlement Amount, ADC Parties will move to dismiss the Adversary and the Texas Case or, alternatively, ADC Parties and the Debtors or Texas Defendants, as the case may be, shall file a stipulation in the Adversary and the Texas Case, as the case may be, dismissing the Adversary and the Texas Case with prejudice, with each side to bear their own attorneys' fees and costs. The Parties agree to extend any applicable deadlines, and otherwise cooperate so as to eliminate the need for any party to take any action, make any filing, or otherwise incur any expense in connection with the Adversary or Texas Case pending confirmation of the Plan and the occurrence of the Effective Date of the Plan or this Agreement.

       1.8    <u>Withdrawal of Debtors' Objection in the Delaware Bankruptcy</u>. On or before the Effective Date of the Plan, the Debtors will withdraw their objection to ADC Holdings' Notice of Possible Assumption and Assignment and Cure Amounts with Respect to Executory Contracts and Unexpired Leases of the Debtors filed in the Delaware Bankruptcy [DE Doc. 271] and all matters related to ADC's request to assume and assign the Franchise Agreements shall be resolved as provided by the terms of this Agreement and the Order entered by the Delaware Bankruptcy Court approving this Agreement.

       1.9    <u>Wire Information</u>. Payment of the Settlement Amount shall be wired to ADC Parties as follows:

          Bank Name: Wells Fargo Bank, San Francisco, CA
          Account Name: Alston & Bird LLP California IOLTA Trust Account
          Account #: 20000 4068 3595
          WIRE ABA #:121 000 248
          ACH ABA #122 287 170
          Swift Code: WFBIUS6S
          Reference: Alamo Drafthouse Cinemas, LLC

       1.10    <u>Non-disparagement</u>. The Paschich Parties and their past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, servants, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest agree that they will not disparage or encourage other others to disparage ADC Parties. For purposes of this Agreement, the term "disparage" includes, without limitation, private or public written or oral statements made in any matter or medium that would materially and adversely affect ADC Parties' ability to acquire, dispose of, obtain financing for, or operate a movie theater or restaurant, and/or maintain or attain business relationships with existing or prospective franchisees.

5

ADC Parties and their past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, servants, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest agree that they will not disparage or encourage other to disparage the Paschich Parties. For purposes of this Agreement, the term "disparage" includes, without limitation, private or public written or oral statements made in any matter or medium that would materially and adversely affect Paschich Parties' ability to acquire, dispose of, obtain financing for, or operate a movie theater or restaurant and/or maintain or attain business relationships with existing or prospective franchisors.

If any public statement is issued by any of the Parties regarding the Debtors' transition to operating the Theaters under a new brand, then this statement must be mutually agreed upon by the Parties and approved in writing.

1.11 <u>Transition</u>. ADC Parties and the Debtors shall work cooperatively to prepare for a transition of the Theaters from operating under the Franchise Agreements, provided however that there shall be no actual transition for the Theaters to cease operating under the Franchise Agreements unless and until all Conditions Precedent are met and the Effective Date of the Plan occurs. The Parties acknowledge that Debtors intend to commence operations, outside of the applicability of the Franchise Agreements, the day after the Effective Date of this Agreement. The Debtors and ADC shall be required to timely comply with the de-identification requirements set forth in the Franchise Agreements, as clarified in the subsequent email exchanges between counsel for the Debtors and ADC, respectively, regarding the Theaters' transition.

1.12 <u>Diligence in Obtaining Necessary Approvals</u>. The Parties agree that they will use their best efforts and diligence to promptly obtain approval of this Agreement, both in the Bankruptcy Cases and the Delaware Bankruptcy, confirmation of the Plan and the occurrence of the conditions precedent to this Agreement. The Parties understand, though, that these matters are governed by the Courts presiding over the Bankruptcy Case and the Delaware Bankruptcy, and that the Parties may be unable to control the timing or precise nature of any approval given or order entered by those Courts. The Parties agree that any deadline otherwise established by this Agreement can be extended by agreement of the Parties in writing. The parties further agree that, so long as they are diligently pursuing approval of this Agreement and confirmation of the Plan, this section 1.12 shall remain binding, notwithstanding the passage of time.

**2. <u>Release Provision.</u>**

2.1 <u>Mutual Release:</u> Except for the rights and obligations of the Parties arising out of this Agreement, as of the Effective Date of the Plan, all Parties, as set forth herein, release, acquit, and forever discharge each other as well as their respective past and present directors, officers, managers, members, shareholders, spouses, subsidiaries, parents, affiliates, divisions, agents, servants, employees, attorneys, insurers, representatives, assigns, successors (whether by merger, consolidation or operation of law) and predecessors in interest, from any and all past, present and future claims of every kind, type and description, known or unknown, direct or consequential, foreseen or unforeseen, which have been, could have been, or may be asserted by and between the Parties through the Effective Date of this Agreement, that arise out of or relate to the Franchise Agreements, including but not limited to any covenant not to compete contained therein, the Development Agreement, including any covenant not to compete contained therein, any documents

6

or agreements ancillary to the Franchise Agreements or the Development Agreement, the Bankruptcy Cases, the Plan, the Adversary, the Debtors' operation of the Theaters, the Texas Case, or the Delaware Bankruptcy (collectively, the "Claims").  It is further understood and agreed that all rights under Section 1542 of the California Civil Code and any similar law of any state or territory of the United States are hereby expressly waived. Said section reads as follows:

"1542. GENERAL RELEASE – CLAIMS EXTINGUISHED. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

**3.** **Warranties and Representations**.

3.1 **Authority to Execute Agreement**. ADC Parties and the Paschich Parties warrant and represent that the individual persons executing this Agreement are duly authorized to execute this Agreement on behalf of the respective Parties and in their respective capacities as indicated below, provided however that the Parties' execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

3.2 **Legal Representations**. ADC Parties and the Paschich Parties represent and agree that: (a) each of the Parties has obtained and/or had the opportunity to obtain independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom; (b) each of the Parties has full knowledge of any and all rights which they may have in connection with the Claims, the subject matter of the Claims, and the facts relating to the Claims; (c) none of the Parties are relying upon and have not relied upon any representation or statement made by any of the Parties or their counsel, with regard to the matters herein compromised or with regard to any rights or asserted rights in connection therewith; and (d) each of the Parties hereby assumes the risk of any mistakes of fact in connection with the true facts involved in this Agreement or with regard to any facts which are now unknown to it relating thereto.

3.3 **Assignment**. Each of the parties hereby warrants, represents and agrees that they are the sole and lawful owner of all right, title and interest in and to all of the respective Claims which are referred to in the release set forth above and that they have not heretofore voluntarily, by operation of law or otherwise, assigned or transferred or purported to assign or transfer to any person whomsoever any such Claims, or any part or portion thereof.

**4.** **Miscellaneous Provisions**.

4.1 **Further Assurance.** In addition to the documents and instruments to be delivered as herein provided, each of the Parties hereto shall, from time to time, at the request of the other Party, execute and deliver to the other Party such information and/or documents; and/or shall take such other action as may be reasonably required to carry out the terms of this Agreement and the Plan. The parties hereto agree to do, execute, acknowledge and deliver (or cause to be done, executed, acknowledged and delivered) each and every such further act, covenant, assurance,

instrument or document, and take any other actions, as may be reasonably necessary to further the purposes of or to carry out the intent and purpose of this Agreement and the Plan.

4.2     Professional Fees.  The Parties shall each bear their own attorney's fees and costs with respect to the preparation and seeking approval of this Agreement and any and all documents and instruments to be delivered and/or filed as herein provided.  With respect to any suit or proceeding involving the enforcement of this Agreement, including, but not limited to, instituting any action or proceeding to enforce any provisions of this Agreement, to prevent a breach of this Agreement, for damages by reason of any alleged breach of any provisions of this Agreement, or for a declaration of a Party's rights or obligations under this Agreement, the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties, in addition to such other relief as may be granted, its reasonable attorneys' fees and costs.

4.3     Breach of the Agreement. It is expressly understood and agreed by each of the Parties that nothing provided for in this Agreement is intended to nor does it release any claims arising out of breach of this Agreement, or any representations contained herein or made in connection herewith. All representations, warranties and covenants herein shall survive the execution of this Agreement.

4.4     Governing Law. This Agreement and the rights and obligations of the Parties hereunder shall be construed, interpreted, and enforced in accordance with the laws of the State of Arizona. In the event of any dispute, the United States Bankruptcy Court for the District of Arizona, Phoenix Division shall be the exclusive forum to resolve such dispute, except that any matter relating to the Delaware Bankruptcy shall be decided by the United States Bankruptcy Court for the District of Delaware.  For avoidance of doubt, the rights and obligations of any underlying agreements between the Parties shall be determined in accordance with the choice of law provision of the particular agreement at issue.

4.5     Counterparts. This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement. The Agreement shall become effective when each Party has obtained a fully executed counterpart of this Agreement.  An electronically transmitted signature shall be deemed an original for all purposes.

4.6     Severability.  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof.  If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

4.7     Waiver. No breach of any provision herein can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be waiver of any other breach of the same or the other provision hereof.

8

4.8    Integration. This Agreement sets forth the entire agreement between the parties with regard to the subject matter hereof and no change, modification, amendment, termination or discharge of this Agreement shall be binding unless made in writing and executed by each of the parties. All agreements, covenants, representations and warranties, express or implied, oral and written, of the parties with regard to the subject matter hereof, are contained in this Agreement and the documents referred to herein or implementing the provisions hereof. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any Party to another Party with respect to the subject matter of this Agreement. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby and thereby. This is an integrated agreement.

4.9    Notices. All notices, consents, waivers, and other communications required or permitted by this Agreement shall be in writing and will be deemed given to a Party when sent by email to the following email addresses ("Notice"). In addition, a hard copy of each Notice shall be sent by United States mail in each case to the following address and marked to the attention of the Person (by name or title) designated below, but the failure to mail such Notice shall not affect the timing or validity of a Notice that has been properly emailed. Each Party may change the email and postal address of that Party by Notice to each other Party pursuant to this Section. Notice shall be sent to:

If to Paschich Parties:

Craig Paschich
519 E Horseshoe Pl.,
Chandler, AZ 85249
craig.paschich@adcwest.com

with a copy to:

Wesley D. Ray
**SACKS TIERNEY P.A.**
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251
wesley.ray@sackstierney.com

If to ADC Parties:

Chris Drazba
ALMO Holdings, LLC
Alamo Drafthouse Cinemas, LLC
Senior Vice President, Franchise Development
250 Dodd Lane
Alpharetta, GA 30005
chris.drazba@drafthouse.com

9

Michael Foreman
Alamo Drafthouse Cinemas, LLC
Director
Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn: Matthew Lunn
mlunn@ycst.com
michael@foremanlawpllc.com

With a copy to:

Leib M. Lerner
Douglas J. Harris
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
leib.lerner@alston.com
douglas.harris@alston.com

4.10    Effective Date.    The Effective Date of this Agreement shall be the date upon which all Conditions Precedent to this Agreement have been satisfied.

[Remainder of page intentionally blank]

10

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

ALAMO CHANDLER, LLC

By:_____
Craig Paschich, Authorized Representative

ALAMO GILBERT, LLC

By:_____
Craig Paschich, Authorized Representative

ALAMO TEMPE, LLC

By:_____
Craig Paschich, Authorized Representative

PASCHICH ALAMO HOLDINGS, LLC

By:_____
Craig Paschich, Authorized Representative

_____
Craig Paschich, Individually

_____
Kimberly Paschich, Individually

ALAMO DRAFTHOUSE CINEMAS, LLC

By:_____
Michael Foreman, in his capacity as Director of Alamo Drafthouse Cinemas Holdings, LLC, sole member of Alamo Drafthouse Cinemas, LLC

ALMO Holdings, LLC

By:_____
Chris Drazba, Authorized Representative

**APPROVED AS TO FORM:**

SACKS TIERNEY P.A.

By: _____
    Wesley D. Ray
Attorneys for Paschich Parties

ALSTON & BIRD LLP

By: _____
    Leib M. Lerner
Attorneys for ADC Parties

Case 2:20-bk-05017-DPC   Doc 246   Filed 07/15/21   Entered 07/15/21 13:27:01   Desc
Main Document    Page 21 of 22

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

ALAMO CHANDLER, LLC

By: _____
Craig Paschich, Authorized Representative

ALAMO GILBERT, LLC

By: _____
Craig Paschich, Authorized Representative

ALAMO TEMPE, LLC

By: _____
Craig Paschich, Authorized Representative

PASCHICH ALAMO HOLDINGS, LLC

By: _____
Craig Paschich, Authorized Representative

_____
Craig Paschich, Individually

_____
Kimberly Paschich, Individually

ALAMO DRAFTHOUSE CINEMAS, LLC

By: _____
Michael Foreman, in his capacity as Director of Alamo Drafthouse Cinemas Holdings, LLC, sole member of Alamo Drafthouse Cinemas, LLC

ALMO Holdings, LLC

By: _____
Chris Drazba, Authorized Representative

**APPROVED AS TO FORM:**

SACKS TIERNEY P.A.

By: _____
Wesley D. Ray
Attorneys for ~~Paschich Parties~~ Debtors

ALSTON & BIRD LLP

By: _____
Leib M. Lerner
Attorneys for ADC Parties

11